J. B. COLT COMPANY, Appellant, v. HEINRICY, et al,
Respondents.

(*227* N. W. 435.)

(File No. 6608. Opinion filed November 8, 1929.)

*W. C. Roszel,* of New York City, and *Jones, Matthews &amp; Fitzpatrick* and *Enos G. Jones,* all of Sioux Falls, for Appellant. .

*Krause & Krause* and *E. P. Van Buren,* all of Dell Rapids, for Respondents.

POLLEY, J. On the 20th day of January, 1926, defendant placed with one O. M. Lane, as agent for plaintiff, an order for an acetylene lighting plant consisting of a carbide generator and necessary accessories. The order was taken by Lane subject to approval and acceptance by the plaintiff company in Chicago. On the morning of January 21, defendant went to said Lane and informed him that he (defendant) had decided that he did not want the lighting plant, and asked for a return and cancellation of the order. Lane informed him that he had already mailed the order to plaintiff and that he could not return it. Defendant then requested a cancellation of the order, and informed Lane that he would not accept or

pay for the plant if it were shipped. But defendant did not in any manner attempt to notify plaintiff, except as above set out, that he wished to cancel his order or that he would not accept or pay for the said plant if it were shipped to him. On the 23d day of January plaintiff wrote defendant from Chicago that his order had been approved and accepted and the material would be shipped forthwith. This letter was received by defendant on or about the 26th day of January. By the terms of the order it became a complete binding contract of purchase upon approval and acceptance by plaintiff. The material was shipped, and on its arrival at defendant's railroad station he paid the freight and hauled the entire plant out to his farm. It remained there for a period of about ten days, when, without having unloaded it from his wagon, defendant hauled it to the railroad station and shipped it back to plaintiff, defendant paying the freight on the return shipment. Defendant refused to pay the purchase price on demand, and plaintiff brought this action to recover the price of the plant.

Defendant for his defense contends that, when he notified plaintiff's agent on the morning of January 21 that he wished to cancel the order and would not accept or pay for the plant if it were shipped to him, his order was revoked, and that there was no further liability on his part. In reply to this contention, plaintiff claims that Lane was not the agent of plaintiff for any other purpose than to take orders and forward them to plaintiff at its office in Chicago, and that notice of revocation to Lane was not binding on plaintiff; and it is true that in its contract of employment of Lane it attempted to limit his authority to the single act of taking and forwarding orders; and the order signed by the defendant contains the following provisions: "It is hereby further expressly agreed that upon acceptance of this order, the contract so made cannot be cancelled, altered or modified by the purchaser or by any agent of the company, or in any manner except by agreement in writing between the purchaser and the company acting by one of its officers."

Whether, by the above-mentioned acts of defendant, he revoked the order before it had been accepted by plaintiff, it is not necessary to decide, because, conceding that a revocation did take place, defendant had a right to waive such revocation, and, by his conduct in voluntarily accepting the lighting plant, paying the

freight thereon, and taking possession thereof, he waived any revocation that may have taken place theretofore.

As a further defense, defendant alleged that plaintiff's agent Lane, who took the order from defendant, told defendant: "That he was selling for said plaintiff a carbide generator plant, with burners, fixtures, pipes and all supplies necessary to make good and sufficient lights; that said generator was automatic in action; and pipes, fixtures and material were galvanized, durable and of the very best material; that the entire plant was of good material and workmanship; that said plant was the cheapest lighting plant on the market, and that the cost of operating it was so small that it required only two fillings of carbide each twelve months, each filling being 200 pounds, which would make a total cost of only $15.00 to $20.00 a year, and that would be the only operating cost for the year; further, that, as said plaintiff did not want to have any dissatisfied customers in the community, it would ship said machinery to this defendant, and would install same in his, defendant's, house and let this defendant try it out for a period of six months, and that if it was then satisfactory to him he was to pay for same, but that if, after said machinery had been tried for said period of six months, it did not give this defendant satisfaction, this defendant was to return it without paying for it; and further, that said Lane stated that said plant was absolutely the safest thing in the world and that there was no danger of explosion. And this defendant alleges further that he agreed with said agent of said company to order said plant on said terms and conditions, and with said warranties, that when said machinery was installed he would try it out, and if it gave him satisfaction, he would pay for same, and that if it did not give him satisfaction, he would return it."

Defendant as a further defense alleges: "That the said representations as made by said plaintiff to this defendant pending the negotiations, and at and prior to the time said instrument was signed, were material and were relied upon by him and that in reliance upon them he was induced to sign an agreement which he did not intend or agree to sign, and which he did not know he was signing, and which he would not have signed had he known the facts. And this defendant further alleges that said representations and all of them were false, and were knowingly false, and were

made with the intention of fraudulently inducing this defendant to sign said instrument. * * * And furthermore, contrary to this defendant's knowledge, as aforesaid, it was fraudulently and falsely, and with intention to deceive and defraud this defendant, made to include a statement that the defendant agreed that said instrument contained all the terms, conditions, warranties, representations, and agreements made or intended to be made between this defendant and said plaintiff; and that this defendant executed said instrument with the express understanding and agreement that no solicitor, agent or credit manager of the plaintiff, had any authority to make any statements, representations, warranties, or agreements, either verbal or written, on behalf of the company. And furthermore, contrary to this defendant's knowledge, as aforesaid, it was fraudulently and falsely, and with intention to deceive and defraud this defendant, made to include a statement that this defendant agreed that no solicitor, agent, or representative of the company had made any statements, representations, or agreements, verbal or written, providing for any extension of time for the payment of the note or notes, or of the contract price, or any part thereof, or for any modification whatever in any terms of said note or notes not expressly set forth in said instrument, or as to the amount of carbide that would be required for use in or operation of the said plant, or providing for a trial use or trial period for said plant, or any condition other than the absolute sale of said plant, or modifying or adding to the terms, conditions, warranties, or agreements contained in said instrument."

The contract signed by defendant contains the following provision: "It is hereby expressly agreed by the purchaser that this instrument contains all the terms, conditions, warranties, representations and agreements made or intended to be made between the purchaser and the company. Purchaser has executed this order with the express understanding and agreement that no solicitor, agent or representative of the company other than an officer or credit manager of the company has any authority to make any statements, representations, warranties, or agreements, either verbal or written on behalf of the company."

The trial court, without regard for the provisions of the written contract, permitted the defendant to introduce evidence to prove a contract based upon the verbal statements alleged to have been

made by the agent Lane. But this was so wholly different from the contract that was signed by defendant and acted upon by the plaintiff that the court clearly erred in the reception of such evidence. The evidence on behalf of the plaintiff, and the admissions of the defendant as well, show beyond any question that the plaintiff carried out the terms of the written contract to the letter, and plaintiff's motion for judgment notwithstanding the verdict should have been granted.

The judgment and order appealed from are reversed and the case remanded to the trial court with directions to enter judgment in conformity with this opinion.

SHERWOOD, P. J., and CAMPBELL, BURCH, and BROWN, JJ., concur.